FILED

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

AUG 2 1 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

JOHN GERALD MASS,                §
TDCJ No. 1133783,                §
                                 §
            Petitioner,          §
                                 §
v.                               §          CIVIL NO. SA-05-CA-1213-OG
                                 §
NATHANIEL A. QUARTERMAN,         §
Director, Texas Department       §
of Criminal Justice,             §
Correctional Institutions        §
Division,                        §
                                 §
            Respondent.          §

## MEMORANDUM OPINION AND ORDER

Petitioner John Gerald Mass filed this federal habeas corpus action pursuant to Title 28 U.S.C. Section 2254 seeking to collaterally attack his August, 2002, Bexar County convictions for three Counts of aggravated sexual assault.  For the reasons set forth below, all relief requested in petitioner's federal habeas corpus petition is denied and petitioner is denied a Certificate of Appealability.

### I. Background

On September 12, 2001, a Bexar County grand jury indicted petitioner on three Counts of aggravated sexual assault.[1]  More

---

[1] The indictment against petitioner alleged petitioner had intentionally and knowingly caused the penetration of the female sexual organ of Nykesha Butler by placing his finger in her female sexual organ while she was a child younger than fourteen years of age.  The three Counts in petitioner's indictment alleged those separate incidents occurred on or about November 11, November 18, and December 2, 1999, respectively. Transcript

specifically, the indictment against petitioner alleged, on three separate occasions in late-1999, petitioner had caused his finger to penetrate the female sexual organ of the same complainant, who was at all relevant times under the age of fourteen.

The guilt-innocence phase of petitioner's jury trial commenced on August 21, 2002.  That same date, the jury returned verdicts finding petitioner guilty on all three Counts.[2]  On August 22, 2002, the same jury sentenced petitioner to serve a 15-year term of imprisonment on Count One and two, ten-year, probated, sentences on Counts Two and Three.[3]

---

of pleadings. Motions and other documents filed in petitioner's state trial court proceeding (henceforth "Trial Transcript"), at pp. 2-3.

[2] Trial transcript, at pp. 44-46; Statement of Facts from petitioner's trial (henceforth "S.F. Trial"), Volume 3 of 5, at pp. 242-49.

[3] Trial Transcript, at pp. 56-57; S.F. Trial, Volume 4 of 5, at pp. 175-78.

Petitioner filed an appeal.[4]  After his first court-appointed appellate counsel was discharged, the Texas Fourth Court of Appeals affirmed petitioner's conviction in an unpublished opinion issued March 24, 2004. *State v. Mass*, no. 04-02-00636-CR (Tex. App. -- San Antonio, March 24, 2004).  On May 10, 2004, petitioner filed a petition for discretionary review asserting the same two grounds included in his appellate counsel's appellant's brief.  On September 22, 2004, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. *PDR no.* 0598-04 (Tex. Crim. App. September 22, 2004).  Petitioner did not thereafter seek certiorari review of his conviction or sentence by the United States Supreme Court.

On October 1, 2004, petitioner filed an application for state habeas corpus relief.[5]  In an Order issued November 16,

---

[4] Petitioner's appellate counsel filed a brief on September 11, 2003 containing only two points of error, i,.e., arguments that (1) the trial court erred in denying his motions for mistrial following repeated instances of the prosecution eliciting testimony concerning allegations of extraneous criminal conduct by petitioner in violation of the trial court's prior ruling granting petitioner's motion in limine on this subject and (2) the trial court erred during the punishment phase of trial in admitting over petitioner's objections prejudicial hearsay regarding another of petitioner's alleged victim's outcry.
On July 28, 2003, petitioner filed a *pro se* supplemental appellate brief in which he attempted to assert eleven points of error.  In its opinion affirming petitioner's conviction, the Texas Fourth Court of Appeals refused to address the merits of any of these grounds, concluding petitioner had no right to hybrid representation on appeal.

[5] Transcript of pleadings, motions, and other documents filed in petitioner's state habeas corpus proceeding (henceforth

2004, the state trial court (1) concluded petitioner's trial and appellate counsel had not rendered ineffective assistance, (2) concluded petitioner's Confrontation Clause arguments were procedurally defaulted by virtue of petitioner's failure to specifically assert a timely Sixth Amendment objection at trial to admission of the hearsay testimony in question, (3) concluded none of the allegedly withheld documents contained any exculpatory or mitigating information, and (4) recommended

---

"State Habeas Transcript"), at pp. 1-42.

As grounds for relief, petitioner's state habeas application included arguments that (1) petitioner's trial counsel rendered ineffective assistance by failing to (a) object to hearsay testimony offered through prosecution witnesses Larry Anderson and Eugenia Evans, (b) request curative jury instructions after similar hearsay testimony was presented to the jury, ©) properly investigate the case against petitioner and discover five reports or statements (specifically an August 6, 200 report by David Johnson, a February 25, 2000 affidavit from Earl Bullock, Jr., a statement by Eugenia Evans, an October 5, 2000 affidavit from Kenneth Hays, and an affidavit from Belinda Cruz), (d) subpoena Belinda Cruz, Eugenia Evans, Earl Bullock, and Theda Wilson to testify at trial, and (e) exclude a biased juror from service on petitioner's jury, (2) petitioner's initial appellate counsel rendered ineffective assistance by failing to timely file petitioner's appellant's brief, (3) petitioner's Sixth Amendment Confrontation Clause rights were violated by virtue of (a) the admission of hearsay testimony at the punishment phase of trial by Michelle Sims, (b) the admission of hearsay testimony at the guilt-innocence phase of trial by the complainant, and (c) petitioner's trial counsel's failure to call Theda Wilson to testify regarding Wilson's bias against petitioner, and (4) petitioner's rights under the holding in the Supreme Court's opinion in *Brady v. Maryland* were violated by the failure of the prosecution to disclose to petitioner's trial counsel four documents (specifically an August 6, 2000 report by David Johnson, the February 21, 2000 "affidavit" of Eugenia Evans, the February 25, 2000 "affidavit" of Earl Bullock, and the January 30, 2000 "affidavit" of Belinda Cruz).

petitioner's state habeas corpus application be denied.[6]  On
March 9, 2005, the Texas Court of Criminal Appeals denied
petitioner's state habeas corpus application without written
Order based on the findings of the trial court made without a
hearing. *Ex parte Mass*, WR-60,728-01 (Tex. Crim. App. March 9,
2005).

On January 4, 2006, petitioner filed his federal habeas
corpus petition in this Court, urging as grounds for relief
arguments that (1) there was insufficient evidence to support the
jury's guilty verdicts, (2) he was denied his Sixth Amendment
Confrontation Clause right to confront adverse witnesses when
hearsay testimony regarding extraneous misconduct was admitted
during both phases of his trial, (3) his rights under *Brady v.
Maryland* were violated by the prosecution's failure to disclose
numerous documents to petitioner's trial counsel, (4) Blacks were
under-represented on his jury venire, (5) the trial court erred
in admitting testimony regarding extraneous misconduct which had
been the subject of a previously granted motion in limine, (6)
the trial court erred in admitting hearsay testimony during the
punishment phase of trial, (7) petitioner's trial counsel
rendered ineffective assistance by failing to (a) move to strike
a biased juror, (b) request a jury instruction on the
prosecution's breaches of the motion in limine, and (c)

--------

[6] State Habeas Transcript, at pp. 71-75.

adequately investigate the case against petitioner and discover numerous documents and witnesses who could have offered favorable testimony at trial, (8) his appellate counsel rendered ineffective assistance by failing to (a) file a timely motion for new trial and (b) file a timely appellate brief, and (9) the state intermediate appellate court erred in refusing to address the merits of the claims contained in petitioner's *pro se* supplemental appellant's brief.[7]

On March 28, 2006, respondent filed an answer in which he argued, in part, that (1) petitioner failed to exhaust available state remedies, and thereby procedurally defaulted, on his complaints of insufficient evidence, the absence of a fair-cross-section of the community in his jury venire, his appellate counsel's failure to timely file a motion for new trial, and the failure of the Texas Fourth Court of Appeals to address the merits of petitioner's *pro se* supplemental brief, (2) petitioner procedurally defaulted on his Confrontation Clause claims by failing to assert a timely objection on that ground at trial, (3) there was no showing the prosecution ever possessed any of the allegedly withheld documents or that any of those documents contained any relevant, material, evidence, (4) the failure of the state trial court to self-enforce its earlier ruling on petitioner's motion in limine did not render petitioner's trial

---

[7] Docket entry nos. 3 & 4.

fundamentally unfair, and (5) petitioner's conclusory assertions of ineffective assistance did not satisfy the prejudice prong of *Strickland v. Washington*.[8]

On April 24, 2006, petitioner filed a response to respondent's answer, in which he challenged respondent's assertions that many of petitioner's claims herein were unexhausted.[9]

## II. AEDPA Standard of Review

Because petitioner filed his federal habeas corpus action after the effective date of the AEDPA, this Court's review of petitioner's claims for federal habeas corpus relief is governed by the AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001).  Under the AEDPA standard of review, this Court cannot grant petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Williams*

---

[8] Docket entry no. 14.

[9] Docket entry no. 15.

*v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).  Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003)("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'").  A state court's failure to cite governing Supreme Court authority does not, *per se* establish that the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents; 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell v. Esparza*, 540 U.S. at 16, 124 S.Ct. at 10.

8

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534-35, 156 L.Ed.2d 471 (2003).  A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. at 520-21, 123 S.Ct. at 2535.  The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Wiggins v. Smith*, 539 U.S. at 520, 123 S.Ct. at 2535; *see Price v. Vincent*, 538 U.S. 634, 641, 123 S.Ct. 1848, 1853, 155 L.Ed.2d 877 (2003)("it is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner").  Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004)("We look for 'the governing legal principle or principles set forth by the Supreme Court at the

time the state court renders its decision.'"); *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003).

The AEDPA also significantly restricts the scope of federal habeas review of state court fact findings.  A petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. <u>See</u> *Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir. 2004)("The AEDPA requires that we presume correct the state court's findings of fact unless the petitioner 'rebuts the presumption of correctness by clear and convincing evidence.'"), *cert. denied*, 543 U.S. 960 (2004); *Pondexter v. Dretke*, 346 F.3d 142, 146 & 149 (5th Cir. 2003)(holding, pursuant to §2254(e)(1), state court findings of fact are presumed correct and the petitioner has the burden of rebutting that presumption by clear and convincing evidence), *cert. denied*, 541 U.S. 1045 (2004); *Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir. 2003)(holding the same), *cert. denied*, 540 U.S. 1163 (2004); 28 U.S.C. § 2254(e)(1).

Finally, in this Circuit, a federal habeas court reviewing a state court's rejection on the merits of a claim for relief pursuant to the AEDPA must focus exclusively on the propriety of the ultimate decision reached by the state court and not evaluate the quality, or lack thereof, of the state court's written

opinion supporting its decision. See *Pondexter v. Dretke*, 346 F.3d at 148 (holding the precise question before a federal habeas court in reviewing a state court's rejection on the merits of an ineffective assistance claim is whether the state court's ultimate conclusion was objectively reasonable); *Anderson v. Johnson*, 338 F.3d 382, 390 (5th Cir. 2003)(holding a federal habeas court reviews only a state court's decision and not the opinion explaining that decision); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*) (holding a federal court is authorized by §2254(d) to review only a state court's decision and not the written opinion explaining that decision), *cert. denied*, 537 U.S. 1104 (2003).

### III. **Procedural Default on Unexhausted Claims**

A.   The Requirement of Exhaustion

A state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' *federal* rights. *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999); *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); 28 U.S.C. §2254(b)(1).  To provide the State with this necessary "opportunity," the prisoner must "fairly present" his

11

claim to the appropriate state court in a manner that alerts that court to the *federal* nature of the claim. *See Baldwin v. Reese*, 541 U.S. at 29-33, 124 S.Ct. at 1349-51 (rejecting the argument that a petitioner "fairly presents" a federal claim, despite failing to give any indication in his appellate brief of the federal nature of the claim through reference to any federal source of law, when the state appellate court could have discerned the federal nature of the claim through review of the lower state court opinion); *O'Sullivan v. Boerckel*, 526 U.S. at 844-45, 119 S.Ct. at 1732-33 (holding comity requires that a state prisoner present the state courts with the first opportunity to review a federal claim by invoking one complete round of that State's established appellate review process); *Gray v. Netherland*, 518 U.S. 152, 162-63, 116 S.Ct. 2074, 2081, 135 L.Ed.2d 457 (1996) (holding that, for purposes of exhausting state remedies, a claim for *federal* relief must include reference to a specific constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief and rejecting the contention that the exhaustion requirement is satisfied by presenting the state courts only with the facts necessary to state a claim for relief).  The exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts and, thereby, to protect the state courts'

12

role in the enforcement of federal law and prevent disruption of
state judicial proceedings. *Carey v. Saffold*, 536 U.S. 214, 220,
122 S.Ct. 2134, 2138, 153 L.Ed.2d 260 (2002); *Duncan v. Walker*,
533 U.S. 167, 179, 121 S.Ct. 2120, 2128, 150 L.Ed.2d 251 (2001);
*O'Sullivan v. Boerckel*, 526 U.S. at 845, 119 S.Ct. at 1732; *Rose
v. Lundy*, 455 U.S. 509, 518-19, 102 S.Ct. 1198, 1203, 71 L.Ed.2d
379 (1982).

The exhaustion requirement is satisfied when the substance
of the *federal* habeas claim has been "fairly presented" to the
highest state court, i.e., the petitioner presents his claims
before the state courts in a procedurally proper manner according
to the rules of the state courts. *Baldwin v. Reese*, 541 U.S. at
29-33, 124 S.Ct. at 1349-51 (holding a petitioner failed to
"fairly present" a claim of ineffective assistance by his state
appellate counsel merely by labeling the performance of said
counsel "ineffective," without accompanying that label with
either a reference to *federal* law or a citation to an opinion
applying *federal* law to such a claim).  The exhaustion
requirement is not met if the petitioner presents new legal
theories or factual claims in his federal habeas petition.
*Anderson v. Harless*, 459 U.S. 4, 6-7, 103 S.Ct. 276, 277-78, 74
L.Ed.2d 3 (1982); *Riley v. Cockrell*, 339 F.3d 308, 318 (5th Cir.
2003)("It is not enough that the facts applicable to the federal
claims were all before the State court, or that the petitioner

13

made a similar state-law based claim.  The federal claim must be the 'substantial equivalent' of the claim brought before the State court."), *cert. denied*, 543 U.S. 1056 (2005); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001)("where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement").  To have "fairly presented" his *federal* claim, the petitioner must have reasonably alerted the state courts to the *federal* nature of his complaint. *Baldwin v. Reese*, 541 U.S. at 29-33, 124 S.Ct. at 1349-51; *Wilder v. Cockrell*, 274 F.3d at 260 ("A fleeting reference to the federal constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument, does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights.").

Respondent correctly points out that many of petitioner's claims for relief in this Court have not previously been "fairly presented' to the highest state court with jurisdiction over same, i.e., the Texas Court of Criminal Appeals.  While petitioner did urge a host of claims in his *pro se* supplemental appellant's brief submitted on direct appeal to the Texas Fourth Court of Appeals, for unknown reasons, petitioner chose not to include any of those claims in his petition for discretionary review filed with the Texas Court of Criminal Appeals.  Thus, the

only claims petitioner "fairly presented' to the Texas Court of
Criminal Appeals on direct appeal were his complaints the state
trial court erred in denying his motions for mistrial and in
admitting hearsay testimony during the punishment phase of trial.

B.    Procedural Default Principles

Procedural default occurs where (1) a state court clearly
and expressly bases its dismissal of a claim on a state
procedural rule, and that procedural rule provides an independent
and adequate ground for the dismissal, or (2) the petitioner
fails to exhaust all available state remedies, and the state
court to which he would be required to petition would now find
the claims procedurally barred. *Coleman v. Thompson*, 501 U.S.
722, 735 n.1, 111 S.Ct. 2546, 2557 n.1, 115 L.Ed.2d 640 (1991).
In either instance, the petitioner is deemed to have forfeited
his federal habeas claim. *O'Sullivan v. Boerckel*, 526 U.S. 838,
848, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999).  Procedural
defaults only bar federal habeas review when the state procedural
rule which forms the basis for the procedural default was "firmly
established and regularly followed" by the time it was applied to
preclude state judicial review of the merits of a federal
constitutional claim. *Ford v. Georgia*, 498 U.S. 411, 424, 111
S.Ct. 850, 857-58, 112 L.Ed.2d 935 (1991).

The Supreme Court has recognized exceptions to the doctrine
of procedural default where a federal habeas corpus petitioner

can show "cause and actual prejudice" for his default or that failure to address the merits of his procedurally defaulted claim will work a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750, 109 S.Ct. at 2565; *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).  To establish "cause," a petitioner must show either that some objective external factor impeded the defense counsel's ability to comply with the state's procedural rules or that the petitioner's trial or appellate counsel rendered ineffective assistance. *Coleman v. Thompson*, 501 U.S. at 753, 111 S.Ct. at 2566; *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (holding proof of ineffective assistance by counsel satisfies the "cause" prong of the exception to the procedural default doctrine).

In order to satisfy the "miscarriage of justice" test, the petitioner must supplement his constitutional claim with a colorable showing of factual innocence. *Sawyer v. Whitley*, 505 U.S. 333, 335-36, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992). To satisfy the "factual innocence" standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *See Sawyer v. Whitley*, 505 U.S. at 335-40, 112 S.Ct. at 2517-19, (holding that to show "actual innocence" in the context of a capital sentencing

scheme, one must show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state statute and that "factual innocence" means a fair probability that, in light of all the evidence, the trier of the facts would have entertained a reasonable doubt as to the defendant's guilt).  In other words, to satisfy the "factual innocence" standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Id.*  The "factual innocence" test, therefore, requires the Court to give consideration to the all of the evidence now available to the Court on the issue of the petitioner's guilt or innocence.  The defendant must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998).

C.   <u>Synthesis</u>

In the course of his state habeas corpus proceeding, petitioner did "fairly present" a number of claims for relief to the Texas Court of Criminal Appeals.[10]  However, petitioner has nonetheless presented this Court with several claims for relief

---

[10] *See* note 5, *supra.*

which he failed to "fairly present" to the Texas Court of Criminal Appeals on either direct appeal or in his state habeas corpus proceeding. Among these unexhausted claims are petitioner's complaints that (1) there was insufficient evidence presented at trial to support his convictions (petitioner's first claim herein), (2) his constitutional right to a jury selected from a fair cross-section of the community was violated (petitioner's fourth claim herein), (3) his appellate counsel rendered ineffective assistance by failing to file a timely motion for new trial (included in petitioner's penultimate claim herein), and (4) the state intermediate court of appeals failed to address the merits of the points of error petitioner included in his *pro se* supplemental brief on direct appeal (petitioner's final claim herein). Respondent correctly argues petitioner has failed to "fairly present" these claims to the state courts and, thereby, procedurally defaulted on same. *Coleman v. Thompson*, 501 U.S. at 735 n.1, 111 S.Ct. at 2557 n.1; *Hughes v. Dretke*, 412 F.3d 582, 595 (5th Cir. 2005), *cert. denied*, ___ U.S. ___, 126 S.Ct. 1347, 164 L.Ed.2d 60 (2006).

## IV. Insufficient Evidence Claim

A.    The Claim

In his first claim herein, petitioner argues there was legally insufficient evidence to support the jury's guilty verdicts.

B.   Procedural Default

   Respondent correctly points out that petitioner failed to present this same claim to the Texas Court of Criminal Appeals, either on direct appeal or in petitioner's state habeas corpus proceeding.  Thus, petitioner procedurally defaulted on this unexhausted claim. *See Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005)(petitioner procedurally defaulted on unexhausted claim because Texas law [Article 11.071, §5(a), Texas Code of Criminal Procedure] ordinarily bars presentation of a claim in a second or successive state writ application where the claim was available and could have been raised in the petitioner's initial state writ application); *West v. Johnson*, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996)(holding a Texas petitioner who failed to present an insufficient evidence claim on direct appeal procedurally defaulted on same under applicable Texas law), *cert. denied*, 520 U.S. 1242 (1997).

C.   No Merit

   Alternatively, petitioner's first claim is legally frivolous.[11]  The applicable constitutional standard for evaluating the sufficiency of evidence supporting a criminal conviction is whether, after viewing the evidence in the light

---

   [11] The AEDPA authorizes federal District Courts to deny relief on the merits notwithstanding the petitioner's failure to exhaust available state court remedies. *Neville v. Dretke*, 423 F.3d at 482; 28 U.S.C. § 2254(b)(2).

most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a
reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99
S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

At petitioner's trial, the complainant testified, in
pertinent part, that (1) she had ridden home with the petitioner
on at least two occasions without incident, (2) on three
occasions in either late-November or early-December, 1999, when
she was age thirteen, while giving her rides home following
basketball games at her middle school, petitioner placed his hand
inside her pants and inserted his finger inside her vagina, (3)
she offered no resistance on any of the three occasions in
question because petitioner was stronger than her, (4) following
the first incident, petitioner directed her not to tell anyone
what had happened, (5) she initially denied anything had happened
when her mother and school principal confronted her, but (6) she
did tell a school janitor whom she trusted what had happened.[12]

Petitioner's challenge to the sufficiency of the evidence
supporting his convictions is little more than an assault upon
his complainant's credibility.  However, the appropriate
sufficiency of evidence standard requires this Court to review
the evidence supporting the jury's guilty verdict in the light

---

[12] S.F. Trial, Volume 3 of 5, testimony of Nykesha Butler,
at pp. 86-99, 111-22, 137, 143-50.

*most favorable* to that verdict.  The complainant's testimony, when viewed in the light most favorable to the jury's guilty verdicts, established petitioner intentionally penetrated the complainant's female sexual organ with his finger on three, separate, occasions while the complainant was under the age of fourteen.[13]  Thus, there was more than legally sufficient evidence upon which to base the jury's guilty verdicts.

### V. Confrontation Clause Claims

A.   The Claims

In his second claim, petitioner argues the admission at both phases of trial of certain hearsay statements violated his Sixth Amendment right to confront adverse witnesses.

1.   Larry Anderson's Hearsay Testimony Re Complainant

The first of the two hearsay statements identified by petitioner as having been admitted during the guilt-innocence phase of trial was elicited not by the prosecution but, rather, by petitioner's own trial counsel during cross-examination of prosecution witness Larry Anderson.  More specifically, petitioner's counsel inquired whether the complainant had told DPS investigator Anderson at the time she gave Anderson her

---

[13] In pertinent part, at all times relevant to petitioner's offense, Section 22.021 of the Texas Penal Code defined the offense of aggravated sexual assault as including the intentional penetration of the female sexual organ of a victim younger than age fourteen.

21

statement that she "liked" what the petitioner had done to her.[14]
The complainant subsequently testified at petitioner's trial that
she had never told anyone she enjoyed what petitioner did to
her.[15]  Petitioner raised no timely objection to the testimony of
Anderson or the complainant on this point.

Petitioner did not challenge the admission of Anderson's
clearly hearsay testimony on direct appeal.  During his state
habeas corpus proceeding, petitioner did accuse his trial counsel
of ineffective assistance for "failing to object to" the same
hearsay testimony said counsel elicited from Anderson on cross-
examination.  However, during his state habeas corpus proceeding
petitioner did not directly challenge the trial court's admission
of this same hearsay testimony as a part of petitioner's multi-
faceted "Confrontation Clause" claim.

2.   Complainant's Hearsay Testimony Re Eugenia Evans

The second hearsay statement petitioner identifies in his
pleadings in this cause consisted of the complainant's
unsolicited statement during her guilt-innocence phase trial
testimony of a remark the complainant attributed to her middle
school janitor, Eugenia Evans.  More specifically, petitioner
complains that the then-16-year-old complainant, during a

---

[14] S.F. Trial, Volume 3 of 5, testimony of Larry M.
Anderson, at pp. 29-30, 33.

[15] S.F. Trial, Volume 3 of 5, testimony of Nykesha Butler,
at pp. 148-50, 156.

lengthy, non-responsive, narrative on direct examination, volunteered the following testimony: "then Gina told me, well, I'm not going to say nothing if they don't ask me questions about it.  Well, She had told me he was doing it to other girls."[16] Petitioner's trial counsel immediately asked to approach the bench and made a motion for mistrial.[17]  The trial court excused the jury and the conference proceeded, during which the trial court repeatedly admonished the 16-year-old complainant not to discuss what others had told her.[18]  While the trial court denied petitioner's motion for mistrial, it did instruct the jury on the record to disregard the complainant's last statement.[19]  At no time during trial did the petitioner's trial counsel raise a Confrontation Clause objection to the admission of this hearsay testimony.

On direct appeal, the Texas Fourth Court of Appeals held the trial court's instruction directing the jury to disregard the hearsay statement volunteered by the complainant was sufficient to cure any error which had occurred.  Petitioner re-urged the same arguments as part of his state habeas corpus proceeding but

---

[16] S.F. Trial, Volume 3 of 5, testimony of Nykesha Butler, at p. 99.

[17] *Id.*, at pp. 99-102.

[18] *Id.*, at pp. 102-09.

[19] *Id.*, at pp. 108-11.

the state trial court failed to address any portion of those claims directly.

3.   Michelle Sims' Hearsay Testimony Re Tammy Waters

The final hearsay statement identified by petitioner in his pleadings in this Court was admitted over petitioner's hearsay objection during the testimony of prosecution witness Michelle Sims at the punishment phase of trial.  More specifically, Sims testified that, in 1986 when she was a high school student, she and a friend named Tammy Waters stayed in a hotel room petitioner rented for them and, shortly after their second night at the hotel, Tammy Waters told her the petitioner had put his hand down Waters' pants.[20]  The state trial court initially sustained petitioner's trial counsel's hearsay objection to this testimony but, subsequently admitted same under the "excited utterance' exception to the Hearsay Rule.[21]  At no time did petitioner's trial counsel raise a Confrontation Clause objection to the admission of Michelle Sims' hearsay testimony.

On direct appeal, the Texas Fourth Court of Appeals held the trial court had not erred in admitting the hearsay testimony in question under the excited utterance exception.  While petitioner presented the same complaint as part of his Confrontation Clause

---

[20] S.F. Trial, Volume 4 of 5, testimony of Michelle Sims, at pp. 11-25.

[21] Id., at pp. 14-24.

claim in his state habeas corpus proceeding, the state trial court failed to address same on the merits.

B.    Procedural Default

Respondent correctly points out that petitioner raised on contemporaneous "Confrontation Clause" objection to the admission at trial of any of the three hearsay statements about which petitioner now complains.  However, no Texas appellate court has ever held petitioner procedurally defaulted on those claims by failing to make a contemporaneous objection thereto.  Thus, the failure of petitioner to make contemporaneous objections to any of the three hearsay statements in question does not bar federal habeas review of petitioner's Confrontation Clause claims herein.

Ordinarily, the federal procedural default doctrine applies only when the last state court to address a federal constitutional claim has applied state procedural default principles to preclude merits review; if the last state court to be presented with a particular claim reaches the merits, it removes any bar to federal-court review that might have been available. *Ylst v. Nunnemaker*, 501 U.S. 797, 801, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991).  Petitioner last presented his the final two portions of his Confrontation Clause herein to the state courts during his state habeas corpus proceeding and the Texas Court of Criminal Appeals disposed of petitioner's state habeas corpus application without any reference whatsoever to any

25

rule of state procedural default.  Under such circumstances, this Court finds no merit in respondent's procedural default defense to the latter two segments of petitioner's multi-faceted Confrontation Clause claim herein.

However, petitioner's complaints about the admission of the hearsay testimony of Larry Anderson have never been "fairly presented" to the Texas Court of Criminal Appeals.  Petitioner failed to include that specific complaint in either his petition for discretionary review or in petitioner's state habeas corpus application.  Therefore, the initial portion of petitioner's multi-faceted Confrontation Clause claim herein is unexhausted. For the reasons discussed in Sections III.C. and IV.B., petitioner procedurally defaulted on the unexhausted portion of his Confrontation Clause claim herein. *Coleman v. Thompson*, 501 U.S. at 735 n.1, 111 S.Ct. at 2557 n.1; *Hughes v. Dretke*, 412 F.3d at 595.

C.   Synthesis

Petitioner's Confrontation Clause claims are premised on an overly-broad reading of the Supreme Court's opinion in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)(holding the Confrontation Clause bars the admission of *testimonial* statements where the declarant is unavailable and the defendant was unable to cross-examine the declarant) is distinguishable from petitioner's complaints about Larry

Anderson's, the complainant's, and Michelle Sims' hearsay testimony.  The Supreme Court made clear in *Crawford* that, as used in that opinion, the term "testimonial statements" applied to *ex parte* in-court testimony or its functional equivalent, such as affidavits, custodial examinations, depositions, and prior testimony that the defendant was unable to cross-examine. *Id.*, 541 U.S. at 51-52, 124 S.Ct. at 1364.  There is no allegation before this Court that any of the three hearsay statements about which petitioner complains were made by their respective declarants during the course of a custodial interrogation or under any other circumstances which would render them "testimonial" for purposes of *Crawford's* holding.  Likewise, petitioner has utterly failed to allege any facts showing that any of the three declarants, with the possible exception of Tammy Waters (whom prosecutors represented to the state trial court was living somewhere in Florida at a location unknown to the prosecution at the time of petitioner's trial), was unavailable at the time of petitioner's trial.  Thus, the holding in *Crawford* is inapplicable to petitioner's Confrontation Clause claims herein.

Insofar as petitioner complains about the admission of Larry Anderson's hearsay testimony, petitioner himself elicited that testimony and failed to fairly present the highest state appellate court with his Confrontation Clause complaint regarding

that testimony.  Under such circumstances, petitioner has procedurally defaulted on this unexhausted portion of his Confrontation Clause claim herein.  This Court cannot grant federal habeas relief on an unexhausted claim. 28 U.S.C. §2254(b)(1)(A).  Moreover, because petitioner later confronted the complainant in open court about this very same hearsay statement attributed to her by Anderson, any Confrontation Clause complaint petitioner has over the admission of Anderson's hearsay testimony fails to rise above the level of harmless error. *See Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993)(holding the test for harmless error in a federal habeas corpus action brought by a state prisoner is "whether the error had substantial and injurious effect or influence in determining the jury's verdict").

Insofar as petitioner complains about the complainant's hearsay testimony attributing a statement to Eugenia Evans, petitioner ignores the fact the state trial court not only sustained petitioner's objection to this portion of the complainant's testimony but also directed the jury to disregard same.  Juries are presumed to follow their instructions. *See Zafiro v. United States*, 506 U.S. 534, 540-41, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993)(juries are presumed to follow their instructions).  Accordingly, this aspect of petitioner's

28

Confrontation Clause claim also fails to rise above the level of harmless error.

Finally, insofar as petitioner complains about the admission of Michelle Sims' hearsay testimony during the punishment phase of trial, petitioner's complaint is foreclosed by clearly established federal law. The Supreme Court has held admission of hearsay testimony does not offend the Sixth Amendment's Confrontation Clause provided the hearsay statements in question were made in contexts which provide substantial guarantees of their trustworthiness. *See White v. Illinois*, 502 U.S. 346, 355-57 & n.8, 112 S.Ct. 736, 742-43 & n.8, 116 L.Ed.2d 848 (1992)(holding the evidentiary rationale for permitting hearsay testimony regarding spontaneous declarations and statements made in the course of receiving medical care carry sufficient indicia of reliability to satisfy the Confrontation Clause); *Idaho v. Wright*, 497 U.S. 805, 820-21, 110 S.Ct. 3139, 3149-50, 111 L.Ed.2d 638 (1990)(recognizing that hearsay statements admitted under a "firmly rooted" hearsay exception, such as the excited utterance and dying declaration exceptions, possess particularized guarantees of trustworthiness which do not offend the guarantees of the Sixth Amendment's Confrontation Clause). Insofar as petitioner mounts a Confrontation Clause challenge to the admission of Michelle Sims' punishment-phase hearsay testimony regarding Tammy Waters' accusation against petitioner,

petitioner's claim is foreclosed by the Supreme Court's holdings in *White* and *Wright*.  The state appellate court reasonably concluded Sims' hearsay testimony was admitted under a hearsay exception the Supreme court has twice held to be "firmly established" for Confrontation Clause purposes.

For the foregoing reasons, the Texas Court of Criminal Appeals' rejection on the merits of the exhausted portion of petitioner's Confrontation Clause claim herein was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor based on an unreasonable determination of the facts in light of the evidence presented in petitioner's state habeas corpus proceeding.

Furthermore, for the reasons set forth above, insofar as the state habeas court failed to address the merits of petitioner's Confrontation Clause claims herein, this Court independently concludes, after *de novo* review, that petitioner's Sixth Amendment Confrontation Clause rights were not violated by the admission of any of the hearsay testimony identified by petitioner in his pleadings in this cause.

### VI. *Brady* Claims

A.   The Claims

In his third claim for relief herein, petitioner argues the prosecution withheld from the defense a pair of documents in

30

violation of the Supreme Court's holding in *Brady v. Maryland*,
373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).   More
specifically, petitioner identifies (1) an affidavit from MLK
Middle School Principal Earl Bullock and (2) an affidavit from
MLK Middle School Custodian Eugenia Evans which petitioner claims
was in the custody of the prosecution but which was never
tendered to petitioner's trial counsel.   However, petitioner has
failed to furnish this Court with a copy of either the purported
affidavit from Principal Bullock or the purported affidavit of
Eugenia Evans.

This Court's painstaking, independent, review of the records
from petitioner's state habeas corpus proceeding disclosed no
affidavit or other document executed by Principal Bullock and
only an unsigned copy of an apparent draft statement containing
redactions which might have been prepared for Ms. Evans'
signature but which clearly bears no signature.[22]

The state trial court's Order of November 16, 2004 setting
forth that court's findings of fact and conclusions of law in the
course of petitioner's state habeas corpus proceeding erroneously
refers to a "report of Principal Bullock to Assistant
Superintendent Toni Thompson" concerning petitioner "which simply

_____

[22] State Habeas Transcript, at p. 24.   Petitioner's State
Habeas Transcript is bereft of any affidavit or other document
signed or executed by Principal Bullock.   Petitioner did not
append a copy of Principal Bullock's purported affidavit to any
of his pleadings in this cause.

relates that the child complainant originally denied the
penetration of her vagina by [petitioner's] finger to her mother,
and later admitted it."[23]  Apparently the report to which the
state trial court referred, which appears among the records from
petitioner's state habeas corpus proceeding, was dated October 5,
2000 and prepared by an investigator named Kenneth Hays.[24]  While
Principal Bullock is mentioned in the Hays report, he did not
execute or sign same.  Investigator Hays' report states, in
pertinent part, that Principal Bullock reported (1) he had heard
from a Coach Wilson that she had overheard unidentified female
students indicating petitioner had a physical relationship with
the complainant, (2) the complainant denied the allegation when
Bullock confronted her, but (3) the complainant's mother
subsequently telephoned Bullock to advise him the complainant had
admitted petitioner had engaged in improper sexual contact with
her daughter.[25]

The state trial court's Order of November 16, 2004 setting
forth that court's findings of fact and conclusions of law in the
course of petitioner's state habeas corpus proceeding also refers
to "an unsigned purported affidavit of one Eugenia Adams [sic]
which supports the allegations of which [petitioner] was

---

[23] State Habeas Transcript, at p. 73.

[24] State Habeas Transcript, at pp. 25-26.

[25] State Habeas Transcript, at pp. 25-26.

convicted."[26]  The draft document, which was apparently prepared by a San Antonio Independent School District law enforcement officer, states that Evans reported (1) seeing petitioner giving the complainant a ride home on numerous occasions in his private vehicle and (2) the complainant informed Evans the petitioner had rubbed her leg and "fingered" her, and (3) the complainant informed Evans she had done nothing about it because she liked it.[27]

The state habeas trial court (1) found no evidence in the record suggesting the prosecution had access to either of these documents, (2) found neither document contained any exculpatory or mitigating information, and (3) concluded there was no *Brady* violation.[28]

B.    Clearly Established Federal Law

Few constitutional principles are more firmly established by Supreme Court precedent than the rule that "'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Banks v. Dretke*, 540 U.S. 668, 691, 124 S.Ct. 1256, 1272, 157 L.Ed.2d 1166 (2004) (*quoting Brady v.*

---

[26] State Habeas Transcript, at p. 73.

[27] State Habeas Transcript, at p. 24.

[28] State Habeas Transcript, at pp. 73-74.

*Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215

(1963)).  The Supreme Court has consistently held that the

prosecution's duty to disclose evidence material to either guilt

or punishment, i.e., the rule announced in *Brady v. Maryland*,

applies even when there has been no request by the accused. *Banks*

*v. Dretke*, 540 U.S. at 690, 124 S.Ct. at 1272 (*quoting Strickler*

*v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 l.Ed.2d

286 (1999)); *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct.

2392, 2399, 49 L.Ed.2d 342 (1976).  This duty applies to

impeachment evidence. *Strickler v. Greene*, 527 U.S. at 280, 119

S.Ct. at 1948; *United States v. Bagley*, 473 U.S. 667, 676 & 685,

105 S.Ct. 3375, 3380 & 3385, 87 L.Ed.2d 481 (1985).  The rule

encompasses evidence known only to police investigators and not

to the prosecutor. *Strickler v. Greene*, 527 U.S. at 280-81, 119

S.Ct. at 1948; *Kyles v. Whitley*, 514 U.S. 419, 438, 115 S.Ct.

1555, 1568, 131 L.Ed.2d 490 (1995).  "[T]he individual prosecutor

has a duty to learn of any favorable evidence known to the others

acting on the government's behalf in this case, including the

police." *Strickler v. Greene*, 527 U.S. at 281, 119 S.Ct. at 1948

(*quoting Kyles v. Whitley*, 514 U.S. at 437, 115 S.Ct. at 1567).

Under clearly established Supreme Court precedent, there are

three elements to a *Brady* claim: (1) the evidence must be

favorable to the accused, either because it is exculpatory or

because it is impeaching; (2) the evidence must have been

34

suppressed by the State, either willfully or inadvertently; and
(3) the evidence must be "material," i.e., prejudice must have
ensued from its non-disclosure. *Banks v. Dretke*, 540 U.S. at 691,
124 S.Ct. at 1272; *Strickler v. Greene*, 527 U.S. at 281-82, 119
S.Ct. at 1948.   Evidence is "material" under *Brady* where there
exists a "reasonable probability" that had the evidence been
disclosed the result at trial would have been different. *Banks v.
Dretke*, 540 U.S. at 698-99, 124 S.Ct. at 1276.

The Supreme Court has emphasized four aspects of the *Brady*
materiality inquiry.   First, a showing of materiality does <u>not</u>
require demonstration by a preponderance that disclosure of the
suppressed evidence would have resulted in the defendant's
acquittal. *See United States v. Bagley*, 473 U.S. at 682, 105
S.Ct. at 3383 (expressly adopting the "prejudice" prong of the
*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984), analysis of ineffective assistance claims as
the appropriate standard for determining "materiality" under
*Brady*).   Second, the materiality standard is *not* a sufficiency of
the evidence test. *Kyles v. Whitley*, 514 U.S. at 434-35, 115
S.Ct. at 1566.   Third, once materiality is established, harmless
error analysis has no application. *Kyles v. Whitley*, 514 U.S. at
435-36, 115 S.Ct. at 1566-67.   Finally, materiality must be
assessed collectively, not item by item. *Kyles v. Whitley*, 514
U.S. at 436-37, 115 S.Ct. at 1567.

C.   Synthesis

Insofar as respondent argues there was no specific allegation or evidentiary showing that either of the documents was ever in the possession of prosecutors, respondent ignores the Supreme court's clear holding in *Kyles v. Whitley*. *See Strickler v. Greene*, 527 U.S. at 280-81, 119 S.Ct. at 1948 (holding the rule in *Brady* encompasses evidence known only to police investigators and not to the prosecutor); *Kyles v. Whitley*, 514 U.S. at 438, 115 S.Ct. at 1568 (holding the same).  Both the Hays report summarizing Principal Bullock's statements and the report summarizing Custodian Evans' statements were prepared by investigators for the SAISD and, therefore, subject to the rule in *Brady* regardless of whether Bexar County prosecutors possessed personal knowledge of the existence or contents of same.  The rule in *Brady* applies to all favorable, material information in the possession of any and all domestic law enforcement agencies. Thus, insofar as the state habeas court rejected petitioner's *Brady* claim on the theory Bexar County prosecutors had no obligation to disclose information contained in reports then-in-the-custody of SAISD law enforcement officers, that conclusion is at odds with clearly established federal law.

However, the Texas Court of Criminal Appeals' conclusion that neither of the documents in question contained any *material* evidence was eminently reasonable.  The statements attributed to

36

Principal Bullock contained in the Hays report and the statements attributed to Custodian Evans contained in the draft affidavit prepared by SAISD Detective Rodriguez were neither exculpatory nor mitigating in nature, nor possessing any additional, substantial, impeachment value.  The complainant's testimony was consistent, for the most part, with the hearsay statements of Custodian Evans recorded in the draft affidavit prepared by detective Rodriguez.  Principal Bullock's hearsay statements contained in the Hays report were consistent in all pertinent respects with the complainant's trial testimony, as well as the trial testimony of the complainant's mother.

Furthermore, the petitioner's trial counsel's cross-examination of prosecution witnesses Larry Anderson, David Johnson, Nykesha Butler, and Diana Butler reveal that said counsel were well aware (1) the complainant had initially denied anything improper occurred between her and the petitioner when she was confronted by Principal Bullock and her own mother and (2) of the allegations the complainant had told others she had "liked" what petitioner had done to her.  Thus, petitioner has failed to allege any specific facts showing that his trial counsel was unaware of the *information* contained in the hays report and draft Evans affidavit at the time of petitioner's trial.  Petitioner misconstrues the nature of the rule in *Brady*. The holding in *Brady* is not analogous to a duty to furnish

discovery in a civil litigation context.  Rather, *Brady* imposes a
duty of disclosure with regard to *information*, regardless of what
form that information might assume, when that information is
favorable, i.e., exculpatory, mitigating, or impeaching in
nature, and "material" as defined by *Brady* and its progeny.
Given the obvious pretrial knowledge of petitioner's trial
counsel of all relevant facts contained in either the Hays report
or Detective Rodriguez's draft affidavit for Custodian Evans,
there is no reasonable probability disclosure to petitioner's
trial counsel of either or both the reports in question would
have made any difference to the outcome of either phase of
petitioner's trial.

The Texas Court of Criminal Appeals' rejection on the merits
of petitioner's *Brady* claims was neither contrary to, nor
involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States, nor based on an unreasonable determination of the facts
in light of the evidence presented in petitioner's state habeas
corpus proceeding.

## VII. Fair Cross-Section Claim

Petitioner complains in this Court that he was denied the
opportunity to select a jury from a fair cross-section of the
community because there was only one black person on his jury
venire.  As explained in Section III.C. above, petitioner failed

to exhaust available state court remedies on this complaint and, thereby, procedurally defaulted on same.

Moreover, even when reviewed on the merits *de novo*, petitioner's fair cross-section complaint is legally frivolous. Petitioner erroneously styles this complaint as a claim for relief under the Supreme Court's holding in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson* dealt with the allegedly discriminatory use of peremptory challenges by a prosecutor in a criminal trial and is irrelevant to petitioner's complaint that only one person in the seventy-five who appeared on his jury venire was Black.

The Sixth Amendment guarantees a criminal defendant the right to have his or her jury chosen from a venire or panel representing a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 527-30, 95 S.Ct. 692, 696-97, 42 L.Ed.2d 690 (1975). The Supreme Court reached its holding in *Taylor* by recognizing: (1) "the Sixth Amendment's provision for jury trial is made binding on the States by virtue of the Fourteenth Amendment" (*Taylor v. Louisiana*, 419 U.S. at 526, 95 S.Ct. at 696); (2) "the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community" (*Id.*, 419 U.S. at 527, 95 S.Ct. at 696); (3) the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial

39

(*Id.*, 419 U.S. at 528, 95 S.Ct. at 697).   Interestingly, the
Supreme Court cited a long line of its equal protection cases
outlawing the purposeful exclusion of racial and ethnic groups
from service on grand and petit juries in support of its
interpretation of the Sixth Amendment's fair cross-section
requirements.   The Supreme Court has acknowledged that its
holding in *Taylor* announced a new rule of constitutional criminal
procedure. *Taylor v. Louisiana*, 419 U.S. at 535-36, 95 S.Ct. at
700 ("until today no case had squarely held that the exclusion of
women from jury venires deprives a criminal defendant of his
Sixth Amendment right to trial by an impartial jury drawn from a
fair cross section of the community.").

The fair cross-section requirement exists separate and apart
from either of the Equal Protection rights recognized in *Batson
v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),
or in the long line of Supreme Court opinions discussed above in
Section III.D.2.a. *See Holland v. Illinois*, 493 U.S. 474, 478-83,
110 S.Ct. 803, 806-08, 107 L.Ed.2d 905 (1990) (distinguishing the
principles governing the Supreme Court's equal protection case
law forbidding the systematic discriminatory exclusion of
identifiable groups from grand juries and petit jury venires from
the Sixth Amendment's fair cross-section of the community
requirement and holding that the latter did not prohibit the use
of peremptory challenges in an allegedly racially discriminatory

manner akin to the Equal Protection Clause's prohibition recognized in *Batson*).

The Supreme Court has repeatedly refused to extend the Sixth Amendment's fair cross-section requirement to the selection of a petit jury once a jury panel or venire has been constituted that satisfies this requirement. *See Holland v. Illinois*, 493 U.S. at 486-87, 110 S.Ct. at 810-11 (holding the Sixth Amendment's fair cross-section requirement does not mirror the Equal Protection Clause's proscription against racial discrimination in the exercise of peremptory challenges); *Teague v. Lane*, 489 U.S. at 314-15, 109 S.Ct. at 1077-78 (recognizing the denial of the right to a fair cross-section of the community in a jury venire does not undermine the fundamental fairness that must underlie a criminal conviction); *Lockhart v. McCree*, 476 U.S. 162, 173, 106 S.Ct. 1758, 1765, 90 L.Ed.2d 137 (1986) ("We have never invoked the fair-cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large.").

A criminal defendant has standing to challenge an exclusion resulting in a violation of the fair-cross-section requirement, whether or not he is a member of the excluded class. *Duren v. Missouri*, 439 U.S. 357, 359 n.1, 99 S.Ct. 664, 666 n.1, 58 L.Ed.2d 579 (1979); *Taylor v. Louisiana*, 419 U.S. at 526, 95

S.Ct. at 695-96.  The Supreme Court has emphasized its
construction of the Sixth Amendment does not deprive the States
of the opportunity to grant exemptions from jury service in cases
of special hardship or incapacity or to persons engaged in
particular occupations whose uninterrupted performance of their
duties is critical to the community's welfare. *See Taylor v.
Louisiana*, 419 U.S. at 534, 95 S.Ct. at 700 ("States are free to
grant exemptions from jury service to individuals in case of
special hardship or incapacity and to those engaged in particular
occupations the uninterrupted performance of which is critical to
the community's welfare."); *Id.*, 419 U.S. at 538, 95 S.Ct. at 701
("States remain free to prescribe relevant qualifications for
their jurors and to provide reasonable exemptions so long as it
may be fairly said that the jury lists or panels are
representative of the community.").

> In order to establish a prima facie violation of
> the fair-cross-section requirement, the defendant must
> show (1) that the group alleged to be excluded is a
> `distinctive' group in the community; (2) that the
> representation of this group in venires from which the
> juries are selected is not fair and reasonable in
> relation to the number of such persons in the
> community; and (3) that this under-representation is
> due to systematic exclusion of the group in the jury-
> selection process.

*Duren v. Missouri*, 439 U.S. at 364, 99 S.Ct. at 668.

The fundamental deficiency in petitioner's "fair cross-
section" claim herein is that petitioner has alleged absolutely
no specific facts showing the under-representation of Blacks on

his particular jury venire was the result of any systematic
exclusion of Blacks from petit jury service in Bexar County.  In
fact, petitioner has failed to allege any specific facts showing
that any jury venire in the history of Bexar County, other than
his own, has ever included a statistically significant under-
representation of Blacks or that such under-representation
resulted from any cause other than pure statistical anomaly.

### VIII. **Admission of Hearsay Evidence**

A.    The Claims

Petitioner argues in his fifth claim herein that the state
trial court abused its discretion when it admitted evidence of
multiple extraneous acts of misconduct by petitioner during the
guilt-innocence phase of trial despite the fact the trial court
had previously granted petitioner's motion in limine on such
evidence.  In his sixth claim, petitioner once again argues the
state trial court erred in admitting Michelle Sims' hearsay
testimony during the punishment phase of trial.

B.    Procedural Default on Unexhausted Federal Theory

In the course of petitioner's direct appeal, the Texas
Fourth Court of Appeals concluded (1) petitioner procedurally
defaulted on any complaint about the manner in which the trial
court enforced its ruling on petitioner's motion in limine by
immediately moving for mistrial every time there was a breach of
the trial court's ruling on the motion in limine, instead of

43

first requesting a jury instruction to disregard the offending testimony, (2) the trial court's instruction directing the jury to disregard the complainant's volunteered hearsay testimony regarding Eugenia Evans' comment about other girls whom petitioner had allegedly molested was sufficient to cure any error arising from that incident, and (3) the trial court properly admitted Michelle Sims' hearsay testimony regarding Tammy waters' outcry statement under the excited utterance exception to the Hearsay Rule. *Mass v. State*, no. 04-02-00636-CR (Tex. App. -- San Antonio March 24, 2004), slip op. at pp. 2-7.

Insofar as petitioner argues the admission of any of the hearsay testimony in question violated state evidentiary rules, that complaint, standing alone, does not furnish a basis for federal habeas corpus relief.  Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991)(holding complaints regarding the admission of evidence under California law did not present grounds for federal habeas relief absent a showing that admission of the evidence in question violated due process); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990)(recognizing that federal habeas relief will not issue for errors of state law); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79

L.Ed.2d 29 (1984)(holding a federal court may not issue the writ on the basis of a perceived error of state law).  In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does <u>not</u> sit as a super-state appellate court. *Estelle v. McGuire*, 502 U.S. at 67-68, 112 S.Ct. at 480; *Lewis v. Jeffers*, 497 U.S. at 780, 110 S.Ct. at 3102; *Pulley v. Harris*, 465 U.S. at 41, 104 S.Ct. at 874.  "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 it must decide whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'  The court does not review a judgment, but the lawfulness of the petitioner's custody <u>simpliciter</u>." *Coleman v. Thompson*, 501 U.S. at 730, 111 S.Ct. at 2554.  Thus, even if petitioner established the trial court erroneously applied Texas evidentiary rules during petitioner's trial, that fact would not, standing alone, establish a violation of petitioner's federal constitutional rights.

Petitioner raised these same complaints on direct appeal as purely state-law complaints.  While petitioner's appellant's brief did include citations to a trio of United States Supreme Court opinions, at no point in his brief on direct appeal did petitioner "fairly present' the state intermediate appellate court with any argument suggesting the admission of the hearsay statements in question violated any provision of the federal

45

Constitution.  On the contrary, the only citations to federal authority contained in petitioner's brief on direct appeal addressed the potential application of state harmless error principles.  There was simply nothing in petitioner's appellant's brief on direct appeal which even remotely alerted, much less fairly advised, the state appellate court that petitioner was asserting a *federal* constitutional claim arising from the admission of the hearsay testimony in question.  Furthermore, petitioner did not re-urge these same complaints as federal constitutional claims in the course of his state habeas corpus proceeding.  For these reasons, insofar as petitioner now attempts to put a federal constitutional "gloss" or "spin" on what are little more than complaints of alleged violations of state evidentiary and procedural rules, such attempts are unexhausted and procedurally defaulted. *See Baldwin v. Reese*, 541 U.S. at 29-33, 124 S.Ct. at 1349-51 (to have "fairly presented" his *federal* claim, the petitioner must have reasonably alerted the state courts to the *federal* nature of his complaint); *Wilder v. Cockrell*, 274 F.3d at 260 ("A fleeting reference to the federal constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument, does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights.").

C.    <u>No Merit to Federalized Claims</u>

Alternatively, petitioner's complaints about the admission of hearsay evidence regarding allegations of extraneous misconduct by petitioner (in violation of the trial court's favorable ruling on petitioner's motion in limine) do not furnish a basis for federal habeas relief.

When a state court admits evidence that is so unduly prejudicial it renders the trial fundamentally unfair, the Fourteenth Amendment's Due Process Clause provides a mechanism for relief. *Dawson v. Delaware*, 503 U.S. 159, 179, 112 S.Ct. 1093, 1105, 117 L.Ed.2d 309 (1992); *Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991); *Darden v. Wainwright*, 477 U.S. 168, 179-83, 106 S.Ct. 2464, 2470-72, 91 l.Ed.2d 144 (1986); *Bigby v. Dretke*, 402 F.3d 551, 563 (5th Cir. 2005), *cert denied*, ___ U.S. ___, 126 S.Ct. 239, 163 L.Ed.2d 221 (2005).

The trial court's admission during the guilt-innocence phase of trial of hearsay testimony regarding allegations of extraneous misconduct by petitioner did not render petitioner's trial fundamentally unfair.  The state trial court gave a very broad curative instruction during the guilt-innocence phase of trial directing the jury to disregard any and all testimony concerning allegations of improper conduct by petitioner other than those relating directly to the complainant's accusations charged in the

47

indictment in that case.[29]  Juries are presumed to follow such instructions. *Zafiro v. United States*, 506 U.S. at 540-41, 113 S.Ct. at 939.

Likewise, the trial court's admission of hearsay testimony during the punishment phase of trial regarding allegations of extraneous misconduct by petitioner did not violate federal constitutional principles.  As explained above, Michelle Sims' punishment-phase hearsay testimony was admitted under a well-settled exception to the Hearsay Rule for excited utterances. Furthermore, it is constitutionally permissible to admit evidence of unadjudicated, extraneous criminal conduct during the punishment phase of a criminal trial. *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005), *cert. denied*, ___ U.S. ___, 126 S.Ct. 1434, 164 L.Ed.2d 137 (2006); *Hughes v. Dretke*, 412 F.3d 582, 593 (5th Cir. 2005)("the Supreme Court has never held that the federal constitution requires a state to prove an extraneous offense beyond a reasonable doubt"), *cert. denied*, ___ U.S. ___, 126 S.Ct. 1347, 164 L.Ed.2d 60 (2006).  Neither does the Constitution require unadjudicated extraneous offenses be proved beyond a reasonable doubt for evidence of those offenses to be admitted at trial. *See Brown v. Dretke*, 419 F.3d at 376-77 (the Constitution does not require the defendant's commission of unadjudicated extraneous offenses be proven beyond a reasonable

---

[29] S.F. Trial, Volume 3 of 5, at p. 110.

doubt before evidence of same may be admitted at a capital trial's punishment phase); *Harris v. Cockrell*, 313 F.3d 238, 246 (5th Cir. 2002)(the introduction of evidence of extraneous offenses, even those of which the defendant has been acquitted, does not violate due process and there is no constitutional requirement that extraneous offenses offered at the punishment phase of a capital trial be proven beyond a reasonable doubt), *cert. denied*, 540 U.S. 1218 (2004).

Accordingly, petitioner's fifth and sixth claims herein do not warrant federal habeas relief.

## IX. Ineffective Assistance Claims

A.    The Claims

In his seventh, eighth, and ninth claims herein, petitioner argues his trial counsel rendered ineffective assistance by failing to (1) move to strike a biased member of the jury venire who ultimately served on petitioner's petit jury, (2) request that the trial court instruct the jury to disregard hearsay statements regarding extraneous misconduct by petitioner mentioned by prosecution witnesses in violation of the trial court's favorable ruling on petitioner's motion in limine, and (3) adequately investigate the case against petitioner and present available documentary evidence showing petitioner was not assigned to the MLK campus on the dates of the alleged offenses contained in the indictment.   In his penultimate and final claims

49

herein, petitioner argues his appellate counsel rendered ineffective assistance by failing to (1) file a timely motion for new trial, (2) file a timely appellant's brief, and (3) assert each of the points of error contained in petitioner's *pro se* supplemental appellant's brief.

B.   The Constitutional Standard

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of *trial* counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland*, i.e., establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000).  In so doing, a convicted defendant must

carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. at 687-91, 104 S.Ct. at 2064-66. Courts are extremely deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight. *See Wiggins v. Smith*, 539 U.S. at 523, 123 S.Ct. at 2536 (holding the proper analysis under the first prong of *Strickland* is an objective review of the reasonableness of counsel's performance under prevailing professional norms which includes a context-dependent consideration of the challenged conduct as seen from the perspective of said counsel at the time).   It is strongly presumed counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542; *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068.   A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.*   In evaluating prejudice, a federal habeas

51

court must re-weigh the evidence in aggravation against the totality of available mitigating evidence. *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542.

In evaluating petitioner's complaints about the performance of his counsel under the AEDPA, the issue before this Court is whether the Texas Court of Criminal Appeals could reasonably have concluded petitioner's complaints about his trial counsel's performance failed to satisfy either prong of the *Strickland* analysis. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004). In making this determination, this Court must consider the underlying *Strickland* standard. *Id.* In those instances in which the state courts failed to adjudicate either prong of the *Strickland* test, this Court's review of the un-adjudicated prong is *de novo*. *See Rompilla v. Beard*, 545 U.S. 374, ___, 125 S.Ct. 2456, 2467, 162 L.Ed.2d 360 (2005)(holding *de novo* review of the prejudice prong of *Strickland* was required where the state courts rested their rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542 (holding the same).

Applying the AEDPA's standard of review, the issue before this Court is whether the Texas Court of Criminal Appeals could *reasonably* have concluded that petitioner's complaints about his

52

trial counsel's performance failed to satisfy either prong of the *Strickland* analysis. *Schaetzle v. Cockrell*, 343 F.3d at 444.  In making this determination, this Court must consider the underlying **Strickland** standard. *Id.*

C.   Complaints About Trial Counsel

   1.   State Court Disposition

   In the course of petitioner's state habeas corpus proceeding, the state habeas trial (1) found petitioner's trial counsel objected to each instance of hearsay testimony identified by petitioner in his state habeas pleadings and consistently moved for mistrial, (2) found, on the fifth such occasion, petitioner's trial counsel also requested the trial court instruct the jury to disregard the hearsay offered by the complainant and the trial court gave such an instruction, and (3) concluded petitioner's trial counsel had not rendered ineffective assistance.[30]

   The state habeas trial court did not address petitioner's "fairly presented" complaints that his trial counsel failed to (1) move to strike venire member Roger Arias, whom petitioner alleges was biased against law enforcement officers and admitted during voir dire he could not properly consider the full range of punishment, i.e., probation, for offenses of the nature with which petitioner had been charged and (2) investigate and present

-----

[30] State Habeas Transcript, at pp. 72-74.